Ruben Ramos PEÑA, and his wife, Migdalia Santiago Alvero, and the conjugal partnership composed between them; Plaintiffs,

v.

CROWLEY AMERICAN TRANSPORT, INC. and/or CROWLEY MARITIME CORP.; Defendants.

No. 99–1147 (RLA).

United States District Court,
D. Puerto Rico.

Oct. 26, 2001.

José R. Franco–Rivera, San Juan, PR, for Plaintiffs.

Raquel M. Dulzaides, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

## *OPINION AND ORDER*

ACOSTA, District Judge.

Plaintiff Rubén Ramos, and his spouse, Migdalia Santiago ("plaintiff"), filed this civil action against Crowley American Transport, Inc. ("CAT"), and Crowley Maritime Corporation ("CMC") premising their jurisdictional allegations on the following: the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 623–634; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 2000e–2(a)(1); the Workers Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101–2109; the Affirmative Action Plan obligations under Executive Order No. 11246; the Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. §§ 4211–4212; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001–1461.

Plaintiff also pleads supplemental jurisdiction over state law claims pursuant to various state laws, including the Puerto Rico tort statute, Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31 § 5141, and the Constitution of the Commonwealth of Puerto Rico.

In compliance with the court's Amended Standing Order Procedure for Filing Dispositive Motions, the defendants filed the dispositive motion package including a Motion for Summary Judgment, with a Statement of Uncontested Material Facts, an Opposition to Motion for Summary Judgment,[1] a Reply Brief, and a Surreply. After due consideration the Court finds as follows:

### *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions. *See Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov-*

*ernment Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995). On a motion for summary judgment, the court is obliged to review the record in the light most favorable to the non-moving party and indulge all justifiable inferences favorable to that party. *Fernándes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 577 (1st Cir.1999).

A party opposing summary judgment must "present definite, competent evidence to rebut the motion." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). When a non-movant party elects to rest upon some combination of conclusory allegations, improbable inferences, and unsupported speculation summary judgment will likely be appropriate. *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994) (citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

This Court has consistently ruled that when a summary judgment motion is supported with affidavits or other materials, the non-moving party cannot respond with mere allegations or denials. Instead, the non-moving party must show, also by affidavits, depositions, testimonies or otherwise, that a genuine issue of fact remains for trial. Fed.R.Civ.P. 56(e). To be considered, the facts contained in the documents and the materials attached to the

---

1. In the Opposition, the plaintiff only argued that there is a genuine issue of material fact as to plaintiff's age discrimination and retaliation claims, which justify a trial. Plaintiff failed to present and develop any argument with regard to the rest of the federal statutes and supplemental claims.

motion for summary judgment, as well as to the opposition, have to be admissible or usable at trial. *Horta v. Sullivan,* 4 F.3d 2, 7–8 (1st Cir.1993).

Moreover, in cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The United States Court of Appeals for the First Circuit has reiterated that "non-movants' failure to present a statement of disputed facts, embroidered with specific citation to the record, justifies the court deeming the facts presented in the movant's statements of undisputed facts admitted." *Corrada Betances v. Sea–Land, Inc.* 248 F.3d 40, 43 (1st Cir.2001), *Morales v. A.C. Orssleff's,* 246 F.3d 32, 34 (1st Cir. 2001).

In the case at hand, defendants complied with the directive under Local Rule 311.12. However, plaintiff's attempt to comply with this Rule 311.12 was totally deficient. Although in the first part of his Opposition plaintiff tried to contest several facts, he failed to point to any reference in the record, or admissible evidence that might support a contrary version. In view of the above, we give complete credence to defendants' Statement of Uncontested Material Facts.

### *Uncontested Facts*

CAT is involved in the ocean cargo transportation industry. It operates in Puerto Rico, as well as other parts of the United States and international ports.

CAT was incorporated in the State of Delaware on September 30, 1954 as TMT Trailer Ferry, Inc. The name was subsequently changed to Trailer Marine Transport, Inc. and then to Crowley American Transport, Inc. The corporation was authorized to do business in Puerto Rico on January 4, 1972. Crowley Maritime Corporation is the sole shareholder of CAT.

CAT's operation is divided into several departments, among others: Yard Control, Marine, Maintenance, Freight Service, Materials, and Human Resources. Each department has a Manager. CAT's operation generates its own income from the fees it charges its clients for the transportation of cargo to and from Puerto Rico. It has a separate and independent bank account with Banco Popular de Puerto Rico. CAT's Puerto Rico operation also has its own personnel and management, as well as its own budget, equipment, materials, procedures, etc.

Crowley Marine Services, Inc. ("CMS") is a sister corporation of CAT, through its parent, Crowley Maritime Corporation. CMS was incorporated in the State of Delaware. It is a wholly owned subsidiary of Crowley Maritime Corporation. The company was authorized to conduct business in Puerto Rico on August 5, 1992.

CMS operated in Puerto Rico through its subsidiary, Crowley Towing and Transportation, Co. ("CTT").

CTT mainly provided assistance in the docking and undocking of vessels in the San Juan Harbor, and in the towing of cargo barges. Its warehouse was operated by CAT under a service agreement between both companies. CAT and CTT are separate corporations with separate operations.

Plaintiff Rubén Ramos ("Ramos") commenced working for CTT on June 6, 1979. He was 42 years old when he was hired. He occupied various positions including Paymaster at CTT; and Credit and Collections Supervisor, Warehouse Supervisor and Stockroom Supervisor at CAT.

In August 1996, Mr. Jesús Rivera ("Rivera"), Director of Administration and Finance, asked Ramos if he was interested in

the Stockroom Supervisor position at Isla Grande.[2] Ramos accepted, and was transferred as a Stockroom Supervisor on August 5, 1996.[3]

In 1996, the Materials Department at CAT had three (3) operations: the Warehouse at San Miguel, Santurce; the Warehouse (also known as Stockroom at Isla Grande); and Office Services at Isla Grande. The largest warehouse operation was located at the San Miguel premises, which serviced CTT's operations.

In total, the CAT Materials Department in August of 1996 had approximately 31 employees: Warehouse Supervisor, Stockroom Supervisor, Office Service Supervisor, 7 union employees that reported directly to Mr. John Cascio ("Cascio"), the Materials Manager; 4 union positions that reported to the Warehouse Supervisor; 12 union jobs supervised by the Office Service Supervisor; and 4 union positions that reported to the Stockroom Supervisor. The union employees were represented by the "Unión de Tronquistas de Puerto Rico, Local 901" ("the Union"). As Materials Manager, Cascio was in charge of overseeing the operation of the entire Materials

Department and reported to the Director of Administration and Finance, who at that time was Rivera.

When Ramos was transferred to the position of Stockroom Supervisor, the position of Warehouse Supervisor at San Miguel was frozen. CAT did, however, hire Mr. Angel Torres ("Torres") under a temporary employment contract to perform the duties of Warehouse Supervisor. Torres' contract as Warehouse Supervisor was renewed on several occasions; the last one expiring on April 30, 1997.

In 1997, and during the whole period pertinent to this case, Cascio was CAT's Materials Manager, and Rivera the Director of Administration and Finance. Cascio was 41 years old and Rivera was 53. Both Cascio and Rivera are Hispanics. Rivera was in charge of overseeing the Materials and Credit and Collections Departments. He also supervised the Controller.

CTT permanently closed its operations in Puerto Rico on February 28, 1997, and consequently laid off all of its approximately 250 employees. With CTT's closing, the

2. The job was vacant because the incumbent had been discharged.

3. The Stockroom Supervisor job description sets forth Ramos' principal duties as follows:

   a. Responsible for control of inventory parts to adequately support CAT, and the proper use of storage space for better utilization of the Warehouse.

   b. Supervises and trains Warehouse personnel.

   c. Ensures the "Out of Stock Report" items are minimum and can be justified.

   d. Maintains control of recap tires documentation and lot flow.

   e. Ensures that all documentation, receiving documents, VRO, PMR's are promptly entered in the system with minimum delay.

   f. Supports CAT operations at St. Thomas. Directly responsible for procurement and delivery of parts to support the operation.

   g. Audits documentation to ensure requests are properly authorized and parts are being issued correctly.

   h. Coordinates repair of material to local and stateside vendors.

   i. Controls Warehouse personnel overtime to a minimum without affecting service.

   j. Maintains clear safe and orderly warehouse in accordance to State and Federal Law requirements.

   k. Ensures that collective bargaining agreement is followed.

   l. Carries out any other related duties as assigned by Materials Manager.

   m. Ensures that Materials management procedures are followed.

   n. Reduces cost whenever possible by constant evaluation of Warehouse Operations.

workload of CAT's Materials Department was substantially reduced because the San Miguel Warehouse mainly serviced the operations of CTT. Consequently, in light of CTT's plant closing, CAT also shut down its warehouse at San Miguel effective February 28, 1997.

With the closing of CAT's facility at San Miguel, the Warehouse Supervisor and the 12 union jobs were eliminated. The employees, who were all Puerto Ricans, were laid off. Rivera, CAT's Director of Administration and Finance, then evaluated the composition of the Materials Department. He analyzed the costs and the positions remaining in the Department. There were 3 administrative positions (Stockroom Supervisor, Office Services Supervisor and Materials Manager), and 17 union employees at Isla Grande. Rivera decided to keep the Office Services Supervisor, María Rivera, since 12 union employees reported to her.[4] A manager was needed in the Department to supervise the Office Services Supervisor, and to perform other duties not covered, such as the preparation of special reports and budgets; oversight of the Company's fleet of cars; and ensuring compliance of local excise taxes. Therefore, Rivera decided to eliminate the

Stockroom Supervisor job classification and fold its responsibilities into the Materials Manager position, including the direct supervision of the remaining 5 union stockroom employees.

With the elimination of the Stockroom Supervisor position, Ramos was informed on May 12, 1997, that he was being laid off. He received a severance pay equivalent to 85 working days. Ramos did not apply for any other position at CAT when laid off.

During Ramos' employment at CAT, he had never worked as Office Services Supervisor nor did he supervise the position. He had not been in charge of the car fleet, nor did he prepare any budgets or special reports or deal with the excise taxes. In addition, his duties as Stockroom Supervisor were different from those of Cascio, the Materials Manager.

Cascio's duties as listed in the Materials Manager job description were not the same as that of the Stockroom Supervisor and included many other responsibilities.[5]

After Ramos' termination, Cascio continued performing these duties in addition to that of Stockroom Supervisor.

---

4. María Rivera had been the Office Services Supervisor since July 1, 1981. She was born in Puerto Rico, is black and in 1997 was 47 years old.

5. Material Manager job description:
   a. Supervise all and every operations under the Materials Department.
   b. Manages all procurement activities ensuring the most cost-effective pricing for all Crowley procurements.
   c. Supervises, controls and coordinates all inventories, which include records issues; established replenishment level in line with Corporate Policies.
   d. Manages the custody of the master inventory.
   e. Evaluates historical data to make future projections. Completes comprehension of computer reports, purchasing proce-

dures, company policies and operational programs.
   f. Controls clearance and compliance with local excise tax laws.
   g. Responsible for disposal of excess equipment and materials.
   h. Ensures expenses of the Purchasing Department are within budget limits; and is responsible for budget data to be included in the Annual Business Plan.
   i. Trains and assists in the professional development of departmental employees.
   j. Establishes departmental goals and objectives that are approved by the Administration and Finance Director and functional reports;
   k. Has functional responsibility to Area Director, Materials for policies and procedures.
   l. In charge of the Company car fleet.

The Materials Manager office was moved to Isla Grande [6] and the Materials Department head count was reduced to 19 employees: one Materials Manager; one Office Services Supervisor, and 17 Union employees. A few months later, on November of 1997, CAT eliminated one of the 3 Stockroom Clerks union positions as part of a reorganization which left the Materials Department with 16 employees: one Materials Manager, one Office Services Supervisor and 14 union employees. No one has occupied the Stockroom Supervisor position since Ramos' layoff.

Cascio worked as Materials Manager until June 16, 1998, when he was transferred to Senior Account Executive II. The Material Manager position was then filled by Mr. José Robles ("Robles"). Robles was working at CAT as Supervisor IV, Claims and Damage Control when he applied for the opening. He was 57 years old when promoted.

On May 1997, approximately 478 employees worked at CAT. Three hundred six employees were over the age of forty 40 and of these, 70 were older than 58. Thirteen of the individuals over 58 occupied either managerial or supervisory positions.

There is no evidence that Ramos was the object of any jokes or stories on the basis of his age; nor that Cascio ever referred to Ramos as an old man; nor did he make any related comments to anyone.

## A. The ADEA Claim

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also, Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000).

■ In an ADEA lawsuit plaintiffs cannot avoid a motion for summary judgment merely by showing that the employer's decision was unwise and/or unfair. Rather, the plaintiffs bear the ultimate "burden of proving that [their] years were the determinative factor in [their] discharge, that is, that [they] would not have been fired but for [their] age." *LeBlanc,* 6 F.3d at 841, citing *Mesnick,* 950 F.2d at 823.

Absent any direct evidence of discrimination, a case has to be analyzed using the burden-shifting test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Pages–Cahue v. Iberia Líneas Aéreas de España,* 82 F.3d 533, 536 (1st Cir.1996) (citing *LeBlanc,* 6 F.3d at 841). *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992); *Mesnick,* 950 F.2d at 823–24.

Under the *McDonnell Douglas* test a plaintiff must initially establish a *prima facie* case by demonstrating that: (1) he falls within the ADEA's protected age group -that the individual is forty (40) or more years of age; (2) that he meets the employer's legitimate job performance expectations; (3) that he experienced an adverse employment action; and (4) that the employer retained younger persons in the same position or otherwise failed to treat age neutrally in implementing the reduction in force.[7] *Cruz–Ramos v. Puerto Rico Sun Oil Co.,* 202 F.3d 381, 384 (1st Cir.2000); *Hidalgo v. Overseas Condado*

---

**6.** The Materials Manager formerly worked out of the Warehouse in San Miguel.

**7.** It is uncontested that the layoff of plaintiff Ramos took place as part of a reduction in CAT's and CTT's work force. Thus, this Court will use the *prima facie* test set forth above which specifically applies to the reduction in work force context.

*Ins. Agencies,* 120 F.3d 328, 332–33 (1st Cir.1997); *Pages–Cahue,* 82 F.3d at 536.

When the *prima facie* case is established, a presumption is created that the employer engaged in impermissible discrimination and the burden of production shifts to the defendant. *Pages–Cahue,* 82 F.3d at 536; *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993). The employer must then rebut the inference of age discrimination by articulating some legitimate, nondiscriminatory reason for the employment action. *LeBlanc,* 6 F.3d at 842; *Mesnick,* 950 F.2d at 823; *see also, St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant-employer sets forth a non-discriminatory reason for the adverse employment action, the inference raised by the *prima facie* case disappears and the burden of production shifts back to the plaintiff. The plaintiff then must "show both that the employer's proffered reason is a sham, and that discriminatory animus sparked [its] actions." *See, Cruz-Ramos,* 202 F.3d at 384 (citing *Conward v. Cambridge Sch. Comm.,* 171 F.3d 12, 19 (1st Cir.1999)); *see also, Reeves,* 120 S.Ct. at 2106. At this stage, a plaintiff may also establish an ADEA discrimination case using a prima facie case combined with sufficient evidence to find that the employer asserted justification is false. *Id.* at 2101.

## I. The Prima Facie Case

For purposes of the Motion for Summary Judgment, the defendants concede that plaintiff Ramos satisfies the first three prongs of the ADEA's *prima facie* case applicable to reduction in force, to wit: that plaintiff Ramos was within the protected age category; that his job performance met the expectations of CAT, and that he suffered an adverse employment action. However, we conclude that with regard to the fourth prong of the *prima* facie case test, Ramos' allegation that CAT did not treat age neutrally or that a younger person was retained in the same job, is very weak.

It is undisputed that after Ramos was laid off, CAT did not retain anyone to fill his job classification.[8] The only fact that Ramos uses to try to establish the fourth element of the *prima facie* case is that the Materials Manager, Cascio, absorbed the supervisory duties of the Stockroom Supervisor position. However, it is undisputed that Cascio continued performing all his duties as Materials Manager, in addition to some of Ramos' obligations. Plaintiff in his Opposition did not develop any argument to establish that Ramos complied with the fourth prong of the *prima facie* test. Still, we will assume without deciding, that Ramos met the fourth element of the *McDonnell Douglas,* test; bearing in mind that the burden of making out a prima facie case is not onerous. *Le Blanc* 6 F.3d at 844.

## II. CAT's Nondiscriminatory Reason

■ Assuming that plaintiff established all the elements of the prima facie case we now determine whether CAT has articulated a legitimate, nondiscriminatory reason for Ramos' lay off. We hold that CAT fully satisfied its burden by presenting through admissible evidence, that the reason for his layoff was the reorganization of the Materials Department at CAT caused by a reduction in force.

It is undisputed that there was a layoff and reorganization in CAT's Materials Department which had an impact on more than 12 employees.[9] The reduction in

8. It is also undisputed that plaintiff Ramos was not prepared to perform the duties of the Materials Manager.

9. Twelve employees were laid off on February 27, 1997; Ramos was laid off on May 12, 2001, and one additional employee on November, 1997.

force occurred in four stages. On February 28, 1997, most of the affected employees were laid off. On April 31, 1997, the Warehouse Supervisor position was eliminated. On May 12, 1997, the Stockroom Supervisor classification was eliminated and its duties were absorbed by the Materials Manager. Furthermore, on November, 1997, a Stockroom Clerk classification was also eliminated. It is also an uncontested fact that the reduction in force was part of the Company's response to the substantial decrease in the workload of CAT's Materials Department during 1997; and that under the circumstances, it was a business decision to eliminate the Stockroom Supervisor position.

These factors dissipate any presumption of discrimination that plaintiff may have had even if we assume *arguendo* that he established under the *McDonnell Douglas* test a *prima facie* case. Therefore, the burden shifts back to the plaintiff who must show that the articulated reason produced by the defendants is a pretext and a sham to discriminate against Ramos. *LeBlanc,* 6 F.3d at 842.

### III. Plaintiff did not present any evidence to establish pretextual motive

■ After an employer produces a valid non-discriminatory reason for adverse employment acts, the burden remains on the plaintiff throughout the action to persuade the finder of facts that he was indeed discharged because of his age. *Id., Gray v. New England Tel. and Telegraph Co.,* 792 F.2d 251 (1st Cir.1986). In his Opposition, plaintiff failed to submit any evidence whatsoever to prove that the reason articulated by CAT for Ramos' layoff was pretextual in nature. Plaintiff merely tried to

refute CAT's justification, based on self serving inferences, conclusions and suggestions that Cascio was the person "who mastermind[ed] Ramos' elimination". (Plaintiff's Opposition at page 10). This contention has no support in the record.[10]

■ The First Circuit has clearly and consistently stated that the finder of facts shall not "second-guess the business decisions of an employer." *Connell v. Bank of Boston,* 924 F.2d 1169, 1172 (1st Cir.1991) *See also Rossy v. Roche Products, Inc.,* 880 F.2d 621, 625 (1st Cir.1989). While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for age discrimination. It is irrelevant that the employer made an unwise business decision or an unnecessary personnel move. It is not enough for the plaintiff to show that the employer acted arbitrarily or even with ill-will. These facts, even if demonstrated, do not necessarily show that *age* was a motivating factor. *Gray v. New England Tel. and Telegraph Co.,* 792 F.2d 251, 255 (1st Cir.1986). The "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." *Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1341 (1st Cir.1988). As discussed in the case at hand, CAT's business reason to lay off the plaintiff is undisputed. This Court will not second-guess CAT's business analysis, especially when the plaintiff himself made no effort to pin point any facts on the record, that may create any doubts as to CAT's justification. In view of the above plaintiff's ADEA claim fails as a matter of law.

10. The fact that Cascio made a recommendation to the Company either to eliminate Ramos' position or his own, does not contradict in anyway CAT's justification for laying off Ramos. To the contrary, it confirms the decision process that took place prior to his layoff.

## B. The Retaliation Claim

■ To establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996). Once the plaintiff has made a *prima facie* showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Id.* If the defendant does so, the plaintiff must show that the defendant's proffered reason was not, in fact, the real reason for the decision and that the decision was the result of the defendant's retaliatory animus. *Id.*

■ In the case at hand, plaintiff avers that his layoff in 1997 was in retaliation for the Complaint he filed against the Company back in 1994. In particular, he alleges that the layoff was in retaliation for the allegations made by him in the 1994 Complaint against Cascio and the latter's deposition taken as part of the proceedings.[11] We assume that the filing of the 1994 lawsuit and the 1997 layoff establish the first two prongs of the *prima facie* case for retaliation. Despite the above, we have not found in the record any other piece of admissible evidence to prove a causal link between the alleged protected activity and the asserted adverse employment action.

The alleged protected activity, to wit, the lawsuit and Cascio's deposition respectively occurred on August 30, 1994 and February 8, 1996, more than a year before Ramos' layoff. Therefore, the time lag between Ramos' participation in a protected activity and his termination is not suffi-cient to support an inference of causation. *Mesnick*, 950 F.2d at 828.

Finally, even assuming that plaintiff complied with his *prima facie* case burden, CAT has articulated a legitimate non-retaliatory reason for Ramos' layoff. Plaintiff was required to present evidence that CAT's proffered reason was a pretext to retaliate against Ramos. As we previously concluded, plaintiff failed to carry his burden.

## C. The Title VII Claim

In his Complaint Plaintiff brings forth claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1). Title VII renders it unlawful for an employer to "discharge any individual... because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). As discussed in the previous section in the context of the ADEA, under Title VII, when plaintiffs are unable to offer direct proof of their employers' discriminatory animus their claim must be analyzed under the four-stage burden shifting framework of *McDonnell Douglas*. *See Rodríguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.1999); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 96 (1st Cir.1996). Under this framework plaintiff has the initial burden of establishing a *prima facie* case of unlawful discrimination. This includes a showing that: (1) plaintiff is a member of a protected class; (2) plaintiff's employer took an adverse employment action against him; (3) plaintiff was qualified for the positions he held; and (4) plaintiff's position remained open or was filled by a person whose qualifications were similar to

---

11. Ramos, during his deposition, admitted that the asserted retaliation against him ended one year prior to his layoff. This statement is totally contradictory to plaintiff's allegation in his Opposition and does not have any support in the record. Although this Court should disregard plaintiff's new allegation, we will acknowledge it for purpose of the discussion.

his. *Rodríguez–Cuervos,* 181 F.3d at 19; *Ayala–Gerena,* 95 F.3d at 95.

As in the ADEA context, once plaintiff establishes a *prima facie* case, the burden shifts to the defendant, to produce a valid and non-discriminatory reason for the termination of employment. *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 56 (1st Cir.1999). "Upon the emergence of such an explanation, it falls to the plaintiffs to show both that the employer's 'proffered reason is a sham, and that discriminatory animus sparked [its] actions.' " *Cruz–Ramos,* 202 F.3d at 384 (citation omitted).

■ In the instant case, plaintiff has patently failed to meet his initial burden of production under *McDonnell Douglas.* His scant allegations are clearly insufficient to set forth a *prima facie* case under Title VII. *De La Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 8 (1st Cir.2000). The mere assertion in the Complaint that Ramos belonged to a protected class by virtue of being Puerto Rican, and that he was dismissed is insufficient to establish a *prima facie* case of discrimination under Title VII. Plaintiff fails to set forth any facts that would remotely suggest a causal nexus between his membership in a protected class and his dismissal. Absent such a showing, plaintiff's Title VII claim fails as a matter of law for lack of a *prima facie* case. *Rodríguez v. Smithkline Beecham,* 224 F.3d 1,.7 (1st Cir.2000).

**D. Claims under the Executive Order 11246 and the Vietnam Era Veteran's Readjustment Assistance Act of 1979**

As to plaintiff's alleged violations of Federal Executive Orders No. 11246 and 11375, and the Vietnam Era Veterans' Readjustment Assistance Act, these claims also have no merit.

■ Executive Order 11246 prohibits discrimination on the basis of race, color, religion, sex, or national origin by federal contractors. Exec. Order 11246 § 202, 3 C.F.R. 167, 168 (1965 Supp.), as amended by Exec. Order No. 11375, 3 C.F.R. 320, 321 (1967 Comp.). Executive Order 11246 is administered by the Office of Federal Contract Compliance Programs (OFCCP) in the Department of Labor, and there is a detailed administrative scheme to assure that federal contractors are in compliance with the order. *See e.g., Volvo GM Heavy Truck Corp. v. United States Dept. of Labor,* 118 F.3d 205, 206–07 (4th Cir.1997). Neither Executive Order No. 11246 nor the regulations implementing it expressly provide a private cause of action in federal court to redress affirmative action violations by an employer. *See Utley v. Varian Associates, Inc.,* 811 F.2d 1279, 1284–85 (9th Cir.1987), *cert. denied,* 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50.

■ Similarly, the Vietnam Era Veterans' Readjustment Assistance Act does not provide a private cause of action in federal court. *See Harris v. Adams,* 873 F.2d 929, 932 (6th Cir.1989) ("[V]eterans who believe themselves to be victims of discrimination may complain to the Secretary of Labor, who enforces the VRA administratively [under] 38 U.S.C. section 2012(b)"). It appears from the Complaint that Ramos is a Vietnam Veteran. However, as stated above, he cannot bring a private cause of action in this Court under the Act.

**E. Claim under the Worker's Adjustment And Retraining Notification Act**

■ Plaintiff claims that CAT did not provide the proper notices under the Worker's Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101, *et seq.* WARN requires that employers with 100 or more employees to give 60 days advance notice of shutdowns affecting at least 50 workers, and layoffs that would last more than six (6) months and affect

one third of the workers at the site of employment. 29 U.S.C. §§ 2101–2102.

In the case at hand, CAT's layoff only affected fourteen (14) employees. Therefore, the notice requirement under WARN was not triggered.

### F. The ERISA Claim

Plaintiff alleges in his Complaint that "CAT violated ERISA when converting the CAT's sponsored retirement plan into an ESOP by executing the transaction to benefit the employer-sponsor and failing to retain an independent trustee to determine the prudence of the transaction". (¶ 28 of the Complaint). However, in his Opposition, plaintiff presents no argument to support his purported claim nor develop any theory in order to establish a valid claim under ERISA, 29 U.S.C. §§ 1001–1461. In any event, we find no legal grounds under ERISA that could support plaintiff's allegations.

### G. The State Law Claims

It is a well established principle that when a District Court dismisses all federal claims before trial, it should dismiss the supplemental state law claims as well. *See, e.g., Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998) (the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation); *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995). *See also, Ruiz v. Posadas de San Juan Assoc.*, 124 F.3d 243, 251 (1st Cir.1997) (permissible to decline supplemental jurisdiction after having properly dismissed federal claims). In the instant case, plaintiff has premised his jurisdictional allegations on various federal laws discussed in the previous sections. Given that plaintiff has failed to set forth facts in his Complaint in support of his federal causes of action, we find that this Court should not entertain plaintiff's supplemental state law claims.

### CONCLUSION

For the reasons herein stated, defendants' Motion for Summary Judgment (Docket No. 27) is **GRANTED.**

Accordingly, the federal claims asserted in the complaint are **DISMISSED WITH PREJUDICE.**

Plaintiff's supplemental state law claims are **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly. **IT IS SO ORDERED.**

### *JUDGMENT*

The Court having issued its Opinion and Order on this same date, it is hereby

ORDERED and ADJUDGED that the federal claims asserted in the complaint are DISMISSED WITH PREJUDICE.

It is further ORDERED and ADJUDGED that plaintiff's supplemental state law claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.