**Michael T. McCLOSKEY, Plaintiff,**

v.

**UNION CARBIDE CORPORATION, Defendant.**

**Civ. No. 5–92–90 (WWE).**

United States District Court, D. Connecticut.

Feb. 4, 1993.

William M. Laviano, Donna L. Ruhling-Laviano, Joseph C. LoCascio, Laviano & LoCascio, P.A., Ridgefield, CT, for plaintiff.

Gary S. Starr, Dana E. Shaw, Siegel, O'Connor, Schiff, Zangari & Kainen, Hartford, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

In this action, plaintiff Michael T. McCloskey alleges that his former employer, Union Carbide Corporation ("UCC"), unlawfully terminated him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff also contends that he was terminated in violation of an express and implied contract of employment. Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56, on the grounds that plaintiff presents no genuine issue of material fact which would support his claim of discrimination. For the reasons set forth below, the motion for summary judgment will be granted.

## FACTS

There are no material facts in dispute. Plaintiff McCloskey has a twenty-seven year relationship with the defendant UCC. He was first hired in 1964 as a mailboy and subsequently was promoted seven times to his most recent position as the Manager of Fixed Assets Accounting at the Danbury, Connecticut facility. At all times during his tenure with UCC, McCloskey received satisfactory reviews.

In 1988, UCC began a review of its organization and began to downsize and sell off some of its operations. Between 1988 and 1990, as part of its efforts to downsize, UCC decided to move its financial operations to Tonawanda, New York and to consolidate regional accounting functions at that location. UCC's decision to consolidate its financial operations was part of the so called "Transition 90 II Program." Under this program, offices were closed or scaled back, certain salaried employees who were laid off were offered severance plans, and other employees were offered the opportunity to transfer. In total, the number of employees performing accounting functions alone was reduced from 110 to 65.

As Manager of Fixed Assets Accounting, McCloskey was one of the employees affected by the Transition 90 II Program. In May 1991, UCC notified McCloskey that his job was being relocated and that he was being transferred from Danbury to Tonawanda. Immediately after receiving this notice, McCloskey began looking for a house in Tonawanda.

Although McCloskey allegedly was told that as long as there were fixed assets at UCC, he would have a job, in June of 1990 UCC decided to eliminate McCloskey's job and divide his responsibilities among other positions. On June 28, McCloskey was given a "Surplus Notice," stating that he would be laid off if he could not find another job within UCC by August 31, 1991.

Other employees from McCloskey's department also had their jobs eliminated as part of the Transition 90 II Plan. Laura Hanson, age 30, accepted a severance package and left voluntarily. Mike Zombo, age 40, found another position within UCC. Yvonne Gore, over age 40, was transferred to Tonawanda.

UCC's proffered reason for this last minute change in plans was that, after an examination of the accounting practices and analysis of new computer capabilities, it determined that it would be more cost effective to consolidate various positions. This consolidation would redistribute the duties of the fixed asset manager among several other existing positions, thereby eliminating the need for a fixed asset manager.

Another employee, Tom Green, was to take on some of McCloskey's responsibilities, and McCloskey was asked to train Greene as to specific aspects of his job. Greene is younger than age forty and received approximately $6,000 less in annual compensation than McCloskey. In addition to performing some of McCloskey's responsibilities, Green worked on improving the workflow system of LIFO, trained plant accountants on inventory control, and worked on capital interest calculations, uniform capitalization functions, and lease reporting. Greene was also experienced on the CFAIS computer system, with which McCloskey was not familiar.

After notifying McCloskey that his job was being "surplused," UCC told McCloskey about an internal resume list by which employees could find other jobs within UCC. McCloskey placed his resume on this list. Although several positions were available between April and June, by the time McCloskey was notified that his job was being eliminated, only one position was available for someone of his skills—Supervisor of General Division Accounting. McCloskey applied and was interviewed for this position. After interviewing six applicants, however, UCC decided not to fill this position and to date has not hired anyone for this position. Although a supervisor inquired about other positions within UCC on McCloskey's behalf, McCloskey was unable to find another job. Thus, McCloskey was terminated on August 31, 1991, at age forty-seven, just eight years short of the 100 percent vesting of his pension. He received severance benefits.

McCloskey alleges that UCC terminated him because of his age. Although he never once heard any age related remarks from anyone in UCC, he states that he has a "gut feeling" that UCC terminated him because of his age and that its claim that his job was being "surplused" was a pretext for discrimination. He contends that the fact that other employees are performing his former job functions is proof that his job is not "surplus," and that UCC's decision to distribute his former responsibilities among other jobs was done to cover up its scheme to discriminate. McCloskey argues that the fact that he was asked to train Greene, a younger employee, is proof of UCC's intent to discriminate. In addition, McCloskey alleges that UCC delayed its decision to eliminate his position and to tell him about the internal resume listing to hurt his chances of finding another position within UCC. Finally, McCloskey argues that UCC intentionally terminated him 8 years prior to the full vesting of his pension so that he would only be entitled to 20 percent of his pension.[1]

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper where there is no genuine issue of material fact, and it is clear that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Montana v. First Federal S & L Assoc.*, 869 F.2d 100, 103 (2d Cir.1989).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... and ... it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323–4, 106 S.Ct. 2548, 2552, 2553, 91 L.Ed.2d 265 (1986). Although "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated ... [t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

In considering an ADEA claim the court follows the three-part *McDonnell Douglas* burden shifting analysis by which plaintiff first must establish a prima facie case of discrimination, in which case the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. The plaintiff then has the burden to prove that the proffered reason is merely a pretext for discrimination.

■ In order to establish a prima facie case of discrimination a plaintiff must show that: 1) he was in the protected age group; 2) he was qualified for his job; 3) he was discharged; and 4) the discharge occurred in circumstances which could give rise to an inference of age discrimination. *Montana*, 869 F.2d at 104–05; *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "The plaintiff's burden of proof at the prima facie stage is *de minimis.*" *Dister*

---

1. While McCloskey raises this point in his papers, he has not alleged a cause of action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

*v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

■ McCloskey has established a prima facie case of age discrimination. He was forty-seven at the time he was terminated, and thus within the protected age group. He was qualified for his job, since he was promoted seven times and consistently received satisfactory job evaluations. Finally, he was discharged under circumstances that could give rise to an inference of age discrimination, in that a younger employee took over some of his responsibilities, he was terminated eight years before full vesting of his pension, and he was given insufficient opportunity to find another job within UCC.

■ Because McCloskey has stated a prima facie case of discrimination, UCC must articulate a legitimate reason for the termination. The employer's reason must be clear and specific. *Dister,* 859 F.2d at 1115. In this case, UCC contends that its decision to discharge McCloskey was part of a corporate reorganization plan to cut costs and increase efficiency. As part of this plan, UCC decided to consolidate operations and eliminate unnecessary or obsolete positions. McCloskey's job was one of the unnecessary positions. A restructuring and reorganizing of operations is a legitimate non-discriminatory reason for termination. The court finds that defendant's proffered reasons for terminating McCloskey are legitimate.

■ Since UCC has articulated a legitimate nondiscriminatory reason for termination, McCloskey must prove that the proffered reason for his discharge is pretextual. A plaintiff may meet this burden either directly, by proving that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Maresco v. Evans Chemetics,* 964 F.2d 106, 110 (2d Cir.1992).

■ McCloskey has not offered any direct evidence that he was discharged because of his age. Therefore, he must show through indirect evidence that UCC's proffered reason for termination is unworthy of belief. Plaintiff, however, has offered insufficient evidence to show that UCC's proffered reason

for termination is unworthy of credence. Indeed, as part of its reorganization, UCC terminated at least 45 employees from its accounting departments, both younger and older than age forty. At least one person in McCloskey's immediate unit who was under age 40 was discharged, and at least two people age 40 and over were transferred, or given a different position within UCC. McCloskey has offered no evidence to show that UCC's reorganization plan was a pretext for firing older workers or for firing him because of his age. Nor is McCloskey's "gut feeling" that he was terminated on the basis of age sufficient to withstand a motion for summary judgment. A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment [20–1] is GRANTED with respect to count one of the complaint. Because there remains no federal cause of action, count two of the complaint is DISMISSED WITHOUT PREJUDICE to its reassertion in state court.