EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Félix Durieux Sepúlveda, et al.<br><br>        Peticionarios<br><br>                v.<br><br>ConAgra, Inc. y/o ConAgra Grain Processing Companies, *nc.*<br><br>        Recurrido | Certiorari<br><br>2004 TSPR 18<br><br>160 DPR _____ |

Número del Caso: CC-2000-751

Fecha: 5 de febrero de 2004

Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:
                Hon. Charles A. Cordero Peña

Abogado de la Parte Peticionaria:
                Lcdo. Arturo Luciano Delgado

Abogadas de la Parte Recurrida:
                Lcda. Carmen I. Muñoz Noya
                Lcda. Karen M. Ocasio Cabrera

Materia: Despido Injustificado, Discrimen por Razón de Edad    y
        Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Félix Durieux Sepúlveda, *et al.*

    Peticionarios

       v.

                             CC-2000-751

ConAgra, Inc. y/o ConAgra Grain
Processing Companies, Inc.

    Recurrido

## SENTENCIA

San Juan, Puerto Rico a 5 de febrero de 2004

Molinos de Puerto Rico (en adelante Molinos) es una empresa organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, dedicada a la producción de harinas para el consumo humano y de alimento para animales, cuya compañía matriz es ConAgra, Inc. (en adelante ConAgra). Según surge de autos, Molinos es el principal fabricante en Puerto Rico de los productos mencionados.

A principios de la década de 1990, ConAgra decidió reestructurar las operaciones de Molinos ante un cuadro de descenso en las ventas. A tales efectos ConAgra contrató al Sr. Fred Lange para que llevara a cabo un estudio sobre la situación de la

2

empresa. De acuerdo con el estudio, Molinos contaba con más empleados de los necesarios -situación que repercutía en un alto número de empleados gerenciales-, un convenio colectivo de difícil implantación, un deterioro general de la planta física y un considerable atraso en la implantación de proyectos capitales.

Molinos nombró al señor Lange como gerente general para que iniciara un proceso de reorganización conducente a aumentar la competitividad de la empresa. Dicho proceso comenzó en octubre de 1993 con la eliminación del tercer turno de producción de alimento, segundo turno de despacho de almacén y tercer turno de mantenimiento. Los anteriores cambios tuvieron como consecuencia la eliminación de seis (6) posiciones de empleados administrativos, ocho (8) de empleados unionados y once (11) de empleados temporeros, para un total de treinta y cinco (35) despidos. El proceso de reorganización continuó a pesar de que el 1 de enero de 1994 el personal unionado de Molinos se fue a la huelga. Otra de las medidas tomadas como parte de la reorganización fue la eliminación de cuarenta (40) posiciones administrativas el 14 de enero de 1994. Entre dichas posiciones se encontraban las de los aquí peticionarios, cuyas circunstancias se exponen a continuación.

El Sr. Félix Durieux Sepúlveda trabajó con la empresa recurrida desde mayo de 1973 ocupando la posición de supervisor de mantenimiento. Al tiempo de su despido

tenía cincuenta y dos (52) años. El Sr. Luis Colón Calcador se desempeñó como mecánico industrial en Molinos desde 1959. Posteriormente fue promovido a supervisor de mantenimiento, posición que ocupó hasta la fecha del despido. Para entonces contaba con cincuenta y ocho (58) años. El Sr. Jorge L. Sierra Rivera fungió como supervisor de mantenimiento desde 1975 y para la fecha del despido tenía cincuenta y dos (52) años. El Sr. Jorge L. Reyes Soto comenzó a trabajar en Molinos como delineante desde 1978. Al momento del despido ocupaba la posición de gerente de proyectos y contaba con sesenta (60) años. El Sr. Héctor Santini inició sus labores en Molinos para 1967 en el departamento de almacén. Para la fecha del despido se desempeñaba como gerente de la unidad de harina y tenía cincuenta y cuatro (54) años.

Las plazas que ocupaban los peticionarios fueron eliminadas y sus funciones fueron redistribuidas. Las responsabilidades de los supervisores de mantenimiento fueron asumidas por el Ing. Ramón Betancourt, quien hasta entonces fue supervisor de los empleados cesanteados. Por otro lado, las tareas que estaban a cargo del señor Reyes Soto fueron asumidas por su supervisor, el ingeniero Betancourt, y por el departamento de ingeniería de las oficinas centrales de ConAgra. Las funciones que desempeñaba el señor Santini fueron asignadas a su supervisor, el Sr. Jorge Lockwood.

Así las cosas, los peticionarios, junto a sus respectivas esposas y sociedades de gananciales, radicaron una demanda contra ConAgra y Molinos, al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a *et seq*, la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146 et seq. (en adelante Ley Núm. 100), y la Age Discrimination in Employment Act, 29 U.S.C.A. secs. 621 *et seq.* (en adelante A.D.E.A.).[1] Alegaron que el despido fue injustificado ya que no estuvo fundamentado en una verdadera necesidad de reorganización empresarial y que constituyó un discrimen por edad. En su contestación a la demanda Molinos y ConAgra alegaron que los despidos formaron parte de un plan de reorganización de la fuerza laboral con el propósito de reducir costos y aumentar su competitividad en el mercado. Adujeron, además, que en ocasión del despido los peticionarios habían recibido un pago en exceso de la mesada establecida en la Ley Núm. 80, *supra*.

A petición de ConAgra y Molinos, el foro de instancia emitió una sentencia sumaria parcial mediante la cual desestimó la demanda respecto a ConAgra al concluir que ésta no era solidariamente responsable por los actos discriminatorios llevados a cabo por Molinos.

---

[1] Además, figuraron como demandantes el Sr. Hipólito Arroyo, ex empleado de Molinos, su esposa y la sociedad legal de gananciales compuesta por ambos. Éstos desistieron de la demanda con perjuicio.

Además, desestimó las causas de acción de las esposas de los peticionarios al determinar que habían prescrito ya que la demanda fue radicada luego de un (1) año desde que ocurrieron los alegados daños y desde que éstas tuvieron conocimiento de quién los ocasionó. Arts. 1802 y 1868 Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141 y 5298. Finalmente, el tribunal de instancia desestimó la causa de acción al amparo de la Ley Núm. 80, *supra*, al determinar que Molinos había pagado a los empleados cesanteados una cantidad mayor a la mesada establecida en la ley.

Luego de varios incidentes procesales, la parte peticionaria presentó su prueba con el propósito de demostrar que la razón aducida por la empresa para llevar a cabo los despidos constituyó un pretexto para ocultar el discrimen por edad. A tales efectos aportó prueba documental consistente de: listados de los empleados de Molinos antes y después de las cesantías; listado de los empleados cesanteados; un informe sobre el estado financiero de Molinos preparado por el Sr. José Edgardo Mendoza Rivera, contador público autorizado; y varios memorandos internos de la empresa donde los empleados manifestaron su incertidumbre en relación con la redistribución del personal. Además, presentó sus propios testimonios y los testimonios del: Dr. Bartolomé Stipec, perito sobre el cómputo del lucro cesante; Sr. Julio Enrique Santiago Cantet, perito en las operaciones

técnicas de la empresa y vicepresidente de Molinos; Sr. Ramón Betancourt, supervisor de los empleados cesanteados; y del Sr. Arturo Figueroa Díaz, quien declaró sobre la posición asumida por la empresa durante el conflicto huelgario que enfrentó antes de los despidos.

Molinos aportó prueba con el propósito de demostrar que los despidos estuvieron justificados ya que formaron parte de un plan de reorganización legítimo fundamentado en la necesidad de aumentar la competitividad de la empresa y que no medió discrimen por edad. Su prueba documental consistió de: listado de empleados de la empresa antes y después de la reorganización; listado de empleados cesanteados; memorandos internos; informe preparado por el Sr. Fred Lange sobre las operaciones de Molinos; y una encuesta sobre la competitividad de la empresa. Como testigos de Molinos comparecieron: la Sra. Elba Delgado, directora de recursos humanos; el Sr. Fred Lange; el Sr. Reynaldo Quiñones Márquez, contador público autorizado; el Sr. Francisco Vaello, empleado de Molinos; el Sr. Arturo Figueroa Díaz; y el Sr. Manuel Orlando Herrera Siberón, presidente de Molinos.

El 27 de octubre de 1988 el tribunal de instancia emitió sentencia mediante la cual desestimó la demanda. Los peticionarios solicitaron revisión del referido dictamen ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) alegando que el foro

sentenciador incidió en la aplicación de la doctrina y la jurisprudencia relacionada con despidos discriminatorios. El Tribunal de Circuito, mediante sentencia emitida el 7 de agosto de 2000, confirmó al foro de instancia al determinar que los peticionarios no habían presentado prueba suficiente para activar la presunción de discrimen a la luz de la Ley Núm. 100, *supra*, y que tampoco habían establecido una reclamación *prima facie* de discrimen a la luz de la A.D.E.A., *supra*.

Inconformes con el referido dictamen, los peticionarios acudieron ante nos aduciendo que incidió el foro apelativo intermedio al determinar que éstos no presentaron evidencia para activar la presunción de que su despido fue uno discriminatorio.[2]

Con el beneficio de las comparecencias de las partes, y luego de analizar detalladamente la prueba que obra en autos, resolvemos que la parte peticionaria no aportó prueba suficiente para activar la presunción de discrimen al amparo de la Ley Núm. 100, *supra*, ni estableció una reclamación *prima facie* de discrimen al amparo de la A.D.E.A., *supra*. Se confirma la sentencia

---

[2]    El 3 de noviembre de 2000 emitimos una Resolución donde ordenamos a la parte peticionaria someter la transcripción de la prueba. La vista en su fondo se llevó a cabo los días 18, 19, 20, 21, 22, 26, 27 y 28 de mayo de 1998. Solamente se presentó ante nos la transcripción correspondiente a los días 18 y 26 de mayo. A pesar de lo anterior, entendemos que con la transcripción y la prueba documental que consta en autos estamos en posición de resolver.

emitida por el Tribunal de Circuito a los efectos de desestimar la demanda instada por los peticionarios.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Naveira Merly emitió un voto particular de conformidad. El Juez Asociado señor Rebollo López emitió un voto de conformidad. El Juez Asociado señor Fuster Berlingeri emitió una opinión disidente a la que se unió el Juez Asociado señor Hernández Denton.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Durieux Sepúlveda, *et al.*

    Peticionarios

       v.

                          CC-2000-751

ConAgra, Inc. y/o ConAgra Grain
Processing Companies, Inc.

    Recurrido

Voto particular de conformidad emitido por la Jueza Presidenta señora NAVEIRA MERLY

San Juan, Puerto Rico a 5 febrero de 2004

Emitimos nuestro voto de conformidad con la posición mayoritaria por entender que los empleados cesanteados no aportaron prueba suficiente para activar la presunción de discrimen a la luz de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146 *et seq.* (en adelante Ley Núm. 100), y tampoco establecieron una reclamación *prima facie* de discrimen al amparo de la Age Discrimination in Employment Act, 29 U.S.C.A. secs. 621 *et seq.* (en adelante A.D.E.A.). ConAgra logró demostrar, por su parte, que tuvo una causa justificada para los despidos ya que éstos fueron consecuencia de un proceso de reorganización legítimo llevado a cabo

por el patrono.  Con el beneficio del trasfondo fáctico expuesto en la Sentencia, examinemos la normativa aplicable a la controversia de marras.

I

A. Reclamación al amparo de la Ley Núm. 100

Cónsono con el mandato constitucional que asegura la dignidad humana y la igualdad de las personas ante la ley, la Asamblea Legislativa aprobó la Ley Núm. 100, *supra*, para penalizar el discrimen en el ámbito laboral.[3] Art. II, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo I.  La mencionada legislación prohíbe el discrimen por razón de *edad*, raza, color, religión, sexo, ideas políticas o religiosas, origen social o nacional y condición social.  En lo pertinente a la controversia de autos, el título de la ley indica que ésta fue aprobada para proteger a los empleados y aspirantes a empleos contra discrímenes de los patronos u organizaciones obreras por razón de edad, siendo una de las modalidades la de edad avanzada.

> En la Exposición de Motivos se expresa que el creciente desarrollo industrial y progreso económico que la Isla había experimentado en

---

[3]    Esta medida forma parte de un esquema legislativo que pretende instrumentar la política pública de prohibir y responsabilizar a los patronos que lleven a cabo prácticas discriminatorias en sus diversas modalidades.  *Véanse* la Ley Núm. 69 de 6 de julio de 1985, 29 L.P.R.A. secs. 1321-1341; Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155-155*l*; Ley Núm. 3 de 13 de marzo de 1942, 29 L.P.R.A. secs. 467-474; *Jusino Figueroa v. Walgreens of San Patricio, Inc.*, res. el 1 de noviembre de 2001; 155 D.P.R. _____ (2001), 2001 T.S.P.R. 150, 2001 J.T.S. 154.

esa época hacía necesario anticipar 'los problemas que de acuerdo a la experiencia obtenida en pueblos más intensamente desarrollados en el orden industrial tal desarrollo conlleva'. Se identificó como uno de estos problemas 'la práctica que ya [comenzaba] a observarse en Puerto Rico, de discriminar en el empleo de personas por razones de edad exclusivamente'. Se hizo mención de que estadísticas recopiladas en los Estados Unidos reflejaban que 'mientras 40% de las personas que solicita[ban] empleos [habían] cumplido 45 años de edad, tan solo 22% de las personas aceptadas para empleos [eran] mayores de esa edad'. *Sandoval Rivera v. Caribe Hilton International*, Op. concurrente emitida por la Jueza Asociada señora Naveira de Rodón, sentencia en reconsideración, 149 D.P.R. 586-587 (1999). (Citas omitidas.)

La prohibición de discrimen por edad protege a los empleados y aspirantes a empleos desde la edad mínima en que por ley se permite trabajar a los menores. Ley Núm. 37 de 7 de junio de 1977. Como podrá observarse, al amparo de la Ley Núm. 100, *supra*, el discrimen por razón de edad avanzada es sólo una de las modalidades de discrimen por razón de edad proscritas.

El Art. 3 de la Ley 100, *supra*, 28 L.P.R.A. sec. 148, establece una presunción de despido discriminatorio. Anteriormente hemos señalado que tal presunción cobra vida en la etapa probatoria y no antes. *Hernández v. Trans Oceanic Life Ins. Co.*, res. el 30 de junio de 2000, 151 D.P.R. _____ (2000), 2000 T.S.P.R. 115, 2000 J.T.S. 125. Dicha presunción no altera totalmente el esquema probatorio prevaleciente en nuestra jurisdicción donde le corresponde a la parte demandante comenzar con la

presentación de la prueba para sustentar sus alegaciones antes de que la parte demandada se vea en la obligación de rebatirla. Regla 10(A) de Evidencia, 32 L.P.R.A. Ap. IV; *Hernández v. Trans Oceanic Life Ins. Co.*, *supra.* La presunción tiene el propósito de facilitarle al empleado probar sus alegaciones, sin embargo, no tiene el efecto de relevarlo de la necesidad de presentar evidencia. No puede ser otro su efecto ya que, a tenor con la Regla 13 de Evidencia, *supra*, "[u]na presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos".

Para activar la presunción de discrimen, el empleado demandante tiene que alegar y demostrar, en primer lugar, que fue despedido. Una vez el empleado cumple con esta fase inicial del proceso, le corresponde al patrono aportar prueba de que hubo justa causa para el despido ya que, de acuerdo con la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a *et seq.* (en adelante Ley Núm. 80), se presume que el despido fue injustificado. Si el patrono no logra demostrar la justa causa para el despido, entonces el empleado deberá presentar evidencia de algún hecho base indicativo de la modalidad de discrimen vinculada al despido para que se active la presunción de despido discriminatorio. *Díaz Fontanez v. Wyndham Hotel Corp.*, res. el 24 de octubre de 2001, 155 D.P.R. ____ (2001), 2001 T.S.P.R. 141, 2001

J.T.S. 146; *Hernández v. Trans Oceanic Life Ins. Co.*, *supra*; *Belk Arce v. Martínez*, 146 D.P.R. 215, 230-232 (1998). Examinemos el contenido de los anteriores requisitos.

Para determinar las actuaciones que pueden ser consideradas como despido, es menester acudir a las disposiciones de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185e. De acuerdo con la recién citada ley, los tres (3) presupuestos indicativos de un despido son: la cesantía del empleado; su suspensión indefinida por un término en exceso de tres (3) meses; y la renuncia motivada por actuaciones del patrono con el objetivo de inducirlo a renunciar, tales como la imposición de condiciones de trabajo más onerosas y la reducción de salario.[4] Nuestra jurisprudencia ha reconocido, además, que el despido puede ser tácito. *Vélez de Reilova v. Ramírez Palmer Bros., Inc.*, 94 D.P.R. 175, 178 (1967). En tales circunstancias, será necesario que el patrono incurra en actos voluntarios e injustificados encaminados a obligar al empleado a abandonar su cargo y que su única alternativa real sea renunciar al empleo.

Resumiendo, luego del empleado probar el hecho base del despido, se activa una presunción de que éste fue injustificado a tenor con la Ley Núm. 80, *supra*. En esta

---

[4] *Véase* Guía Revisada para la interpretación y aplicación de la Ley Núm. 80, Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico, 1996, págs. 21-23.

etapa del proceso, el patrono puede rebatir dicha presunción demostrando que hubo justa causa para el despido. En otras palabras, se invierte el peso de la prueba teniendo el patrono que demostrar que el despido estuvo justificado. Ahora bien, como la Ley Núm. 100, *supra*, no incluye una definición de lo que se considera como justa causa para un despido, hemos resuelto que debe aplicarse la definición provista por la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185b.[5] El patrono como justa causa para el despido puede alegar y aportar prueba sobre hechos, tales como:

> (e) Los cambios tecnológicos y de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.[6]

---

[5] Al aplicar la definición de la Ley Núm. 80, *supra*, recurrimos a la norma de hermenéutica de aplicar otras leyes *in pari materia*. *Báez García v. Cooper Labs, Inc.*, 120 D.P.R. 145, 155 (1987).

[6] Sin pretender ser exhaustivos, la Ley Núm. 80, *supra*, establece, además, que será justa causa para el despido: que el empleado siga un patrón de conducta impropia; que éste no rinda su trabajo de forma eficiente o que lo haga tardíamente, de forma negligente o en contravención a las normas de calidad del producto del establecimiento; la violación reiterada del empleado a las normas de conducta del establecimiento que le hayan sido suministradas oportunamente; y el cierre total, temporero o parcial de las operaciones del establecimiento. "No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal

Finalmente, será necesario que el empleado presente evidencia indicativa de la modalidad de discrimen en la que fundamenta su reclamación. En acciones como la presente, donde se alega discrimen por edad avanzada, será necesario que el empleado demuestre que fue despedido; que está cualificado para ejercer las funciones de su cargo; que es de una edad contra la cual usualmente se discrimina en la industria o rama del comercio donde labora; o que fue sustituido por una persona más joven o mayor, según fuere el caso.

En otras palabras, una vez el empleado logra demostrar que fue despedido y el patrono no logra demostrar que el despido fue justificado, le corresponde al empleado probar el hecho base indicativo del tipo de discrimen alegado para que se active la presunción de despido discriminatorio. Activada esta presunción, le corresponde a la parte demandada, es decir, al patrono, el peso de persuadir al juzgador de que el despido no fue discriminatorio. De acuerdo con nuestros pronunciamientos en *Hernández v. Trans Oceanic Life Ins. Co., supra*, son varias las alternativas que tiene la parte demandada para rebatir la presunción de despido discriminatorio. Ésta puede aportar prueba de que el despido estuvo justificado; o puede presentar evidencia

---

funcionamiento del establecimiento". 29 L.P.R.A. sec. 185b.

para demostrar que a pesar de que el despido fue injustificado, éste no fue discriminatorio.

Si el patrono logra rebatir la presunción del Art. 3, *supra*, el empleado tendrá una nueva oportunidad para probar que fue víctima de discrimen, sin embargo, en esta ocasión no tendrá el beneficio de la presunción. El empleado demandante "[t]endrá que presentar evidencia de incidentes o hechos que prueben dicho discrimen o de los cuales se pueda inferir la alegada actuación discriminatoria". *Id*. En síntesis, la Ley Núm. 100, *supra*, pretende establecer un esquema probatorio favorable al empleado, donde una vez se activa la presunción de discrimen, el patrono debe rebatirla mediante preponderancia de la prueba. Lo anterior representa un quantum de prueba mayor que el exigido en la legislación federal. *Jusino Figueroa v. Walgreens of San Patricio, Inc.*, *supra*.

Dado que la reclamación ante nos también se fundamenta en la A.D.E.A., *supra*, debemos examinar el esquema probatorio aplicable a dicha legislación.

B.  Reclamación al amparo de la A.D.E.A.

La A.D.E.A., *supra*, es la contraparte federal de la Ley Núm. 100, *supra*. Ésta reconoce una causa de acción en daños a toda persona que sea despedida o rechazada de un empleo por razón de su edad. El grupo protegido por

la mencionada legislación está compuesto por aquellos empleados y aspirantes a empleo entre las edades de cuarenta (40) a setenta (70) años.

En *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), el Tribunal Supremo federal desarrolló un esquema probatorio para establecer un caso *prima facie* de discrimen ya que la A.D.E.A., *supra*, no establece una presunción como la incluida en nuestra legislación. De acuerdo con dicho esquema, será necesario que el empleado demuestre por preponderancia de la prueba que: pertenece a la clase protegida por la ley; está cualificado para desempeñar las funciones del empleo; fue despedido; y fue sustituido por una persona más joven. Recientemente el Tribunal Supremo de los Estados Unidos determinó que no es necesario que los anteriores elementos surjan de las alegaciones de la demanda, sino que éstos deben quedar demostrados en la etapa evidenciaria. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-511 (2002).

Una vez establecidos los anteriores elementos, **el patrono demandado tiene la obligación de producir evidencia**, no de probar, que su acción estuvo justificada, o sea que estuvo basada en una razón legítima y no discriminatoria. **El patrono debe articular una explicación razonable para el despido.**[7] Cuando el

---

[7] Reiteramos que, contrario a la A.D.E.A., *supra*, a tenor de la Ley Núm. 100, *supra*, el patrono debe rebatir la presunción de discrimen mediante preponderancia de la prueba. No basta con articular una explicación

patrono logre articular dicha explicación para el despido, el empleado demandante tendrá la oportunidad de demostrar que la razón aducida por el patrono es un mero pretexto y que en realidad la actuación fue discriminatoria. *Ibáñez v. Molinos de Puerto Rico*, 114 D.P.R. 42, 49 (1983).

De acuerdo con las normas expuestas, examinemos la prueba presentada en el caso de autos para determinar si los peticionarios lograron activar la presunción del Art. 3, *supra*, o si lograron establecer un caso *prima facie* de discrimen de acuerdo con la A.D.E.A., *supra*.

II

Antes de comenzar el análisis de la prueba, es menester señalar que la Ley Núm. 100, *supra*, y la A.D.E.A., *supra*, difieren en cuanto al peso probatorio inicial que tiene que satisfacer el empleado para activar la presunción de discrimen, bajo la legislación local, o para establecer un caso *prima facie* de discrimen, bajo la disposición federal. En este sentido, el esquema probatorio de la Ley Núm. 100, *supra*, es más favorable al trabajador. Tal diferencia podría provocar distintos resultados dependiendo de la legislación en la cual se fundamente la reclamación. No obstante, en el presente

---

razonable para el despido. *Jusino Figueroa v. Walgreens of San Patricio, Inc.*, *supra*; *Ibáñez v. Molinos de P.R.*, *supra*, pág. 53.

caso se impone el mismo resultado bajo cualesquiera de los estatutos.

Iniciaremos el análisis a la luz de los elementos para activar la presunción de discrimen de la Ley Núm. 100, *supra*. Para recapitular, el empleado debe demostrar que: fue objeto de un despido; entonces le corresponde al patrono probar que el despido fue uno justificado y si no logra demostrar que el despido fue por justa causa, el empleado podrá aportar evidencia de algún hecho base indicativo de la modalidad de discrimen alegada para de esta forma activar la presunción de despido discriminatorio. Una vez activada la presunción, le corresponde al patrono rebatirla. Si el patrono derrota la presunción, todavía el empleado tiene la oportunidad de probar que hubo un despido discriminatorio, pero esta vez tendrá que hacerlo sin el beneficio de la presunción.

De la prueba que consta en autos surge que los empleados peticionarios fueron despedidos mediante cartas donde se les informó que sus posiciones serían eliminadas.[8] Ante estos hechos, aducen que para la eliminación de sus posiciones no hubo un análisis ni estudio científico y, por ende, la selección de los empleados que habrían de afectarse no estuvo fundamentada en parámetros de razonabilidad. Por su parte, Molinos alegó que la eliminación de las plazas ocurrió como

---

[8] Todas las cartas de despido estaban fechadas 10 de diciembre de 1993.

consecuencia de un proceso de reorganización ante un cuadro de reducción de ganancias y que éste tuvo el propósito de aumentar la competitividad de la empresa.

A tenor con la Ley Núm. 80, *supra*, constituye justa causa para el despido los cambios producto de una reorganización en el establecimiento, así como las reducciones en el empleo producto de una disminución en el volumen de ventas, ganancias o producción. Las anteriores disposiciones reconocen al patrono la facultad de tomar aquellas decisiones que estima benefician a su empresa. Comúnmente los cambios tecnológicos, de reorganización o de servicios conllevan a su vez cambios en las funciones de los empleados, la forma de realizar las labores y en el nivel de educación, capacidad y destrezas requeridas a los trabajadores. Ello puede provocar el surgimiento de nuevas clasificaciones ocupacionales o la consolidación de éstas. Charles Zeno Santiago, *El despido y la política social en nuestro estado de Derecho*, 34 Rev. Jur. U.I.P.R., 183, 224 (2000).

> La función de establecer las clasificaciones ocupacionales en una empresa y determinar en cuál de ellas se desempeña un empleado, constituye una prerrogativa gerencial que de ordinario debe merecer gran deferencia a los tribunales. Éstos sólo deben alterar la determinación original del patrono cuando resulta obvio que sostener la misma conllevará un fracaso de la justicia.
>
> La prerrogativa gerencial le otorga al patrono la facultad de tomar las **medidas administrativas legítimas** que considere necesarias para la sana administración de su negocio. Guía revisada para la interpretación

y aplicación de la Ley Núm. 80, *supra*, en la pág. 39. (Énfasis suplido.)

En el caso de marras la parte recurrida, Molinos, demostró que llevó a cabo un proceso legítimo de reorganización. A tales efectos se ofreció un estudio sobre competitividad realizado por el señor Lange.[9] De éste surge que: Molinos tenía una nómina con salarios en exceso del promedio; existían demasiadas posiciones administrativas, muchas de las cuales resultaban innecesarias; los proyectos de capital no se estaban implementando oportuna y eficazmente; y existían más turnos de trabajo de los necesarios, por lo que la producción se veía interrumpida constantemente. Por otra parte, las ventas de la empresa experimentaron un descenso. Así, las ventas en 1992 alcanzaron la suma de $222,043; mientras que en 1993 el total de ventas fue de $277,659; en 1994 el total fue de $245,573; en 1995 las ventas obtenidas fueron por la suma de $238,490; y en 1996 el total de ventas fue $247,098.[10]

---

[9] Recurso de *certiorari*, Apéndice, págs. 315-319.

[10] Apéndice, pág. 377. Cabe señalar que uno de los peritos de los peticionarios, el Sr. José Edgardo Mendoza Rivera, contador público autorizado, testificó que Molinos gozaba de una situación financiera saludable y que es una empresa mucho más grande que sus competidoras. Sin embargo, el mero hecho de que Molinos goce de una situación financiera saludable no obsta para que pretenda aumentar su competitividad y sus ganancias, de acuerdo con las tendencias del mercado. Transcripción, *supra*, pág. 184.

Ante los hallazgos del estudio y la reducción en las ventas, se inició un proceso de reorganización que consistió de la eliminación de treinta y cinco (35) posiciones de empleados unionados y administrativos. El 14 de enero de 1994, fecha del despido de los peticionarios, fueron eliminadas cuarenta (40) plazas administrativas.[11] No encontramos en las actuaciones de Molinos algún hecho indicativo de que en el proceso de reorganización se considerara la edad como factor determinante para la selección de las posiciones que serían eliminadas. Abona a nuestra conclusión el hecho de que Molinos le ofreció al señor Colón Calcador un empleo temporero como mecánico, pero éste lo rechazó.[12] Al señor Sierra Rivera le ofrecieron un empleo temporero como electricista y también lo rechazó.[13] Por otro lado, de un examen del listado de los empleados de Molinos surge que para 1993 la edad promedio de éstos era cuarenta y tres (43) años; mientras que para 1994 y 1995 era cuarenta y cinco (45) años, por ende, la fuerza trabajadora de la empresa era de mayor edad luego de que ocurrieron los despidos.[14]

---

[11]   Además, se eliminó el primer turno de producción de alimento, el segundo turno de despacho de almacén y el tercer turno de mantenimiento.

[12]   Transcripción de evidencia, 18 de mayo de 1998, en la pág. 78.

[13]   Apéndice, pág. 485.

[14]   Apéndice, págs. 1158-1170.

El plan de reorganización de Molinos constituye justa causa para los despidos. Ni de dicho plan ni de la evidencia presentada surge que el patrono incurriera en actuaciones discriminatorias por razón de edad avanzada. La única prueba presentada por los peticionarios para sostener las alegaciones de discrimen fue unos comentarios sobre la edad de los peticionarios hechos por el Sr. Francisco Vaello, supervisor de Molinos. Sobre el particular, el señor Colón Calcador testificó que cada vez que la empresa pretendía forzar a algún empleado a acogerse a la jubilación, era el señor Vaello quien se encargaba de promover los beneficios del retiro. Sin embargo, el único comentario que alegadamente hizo el señor Vaello fue: "[m]uchacho, si yo tuviera todo el tiempo que tú tienes aquí en el Molino yo me retiraba porque me daban muchísimo dinero".[15] Tales expresiones aisladas y sin otros hechos que puedan evidenciar la intención de Molinos de discriminar contra los empleados de edad avanzada, no bastan para activar la presunción de discrimen.

A la luz de lo expuesto se puede colegir que el patrono pudo rebatir la presunción de despido injustificado. Faltando el elemento de que el despido fue injustificado, no se podía activar la presunción de

_____

[15]   Transcripción, *supra*, pág. 58.

despido discriminatorio establecida en la Ley Núm. 100, *supra*.

Nos corresponde ahora determinar si los peticionarios lograron establecer una reclamación *prima facie* de discrimen a la luz de la A.D.E.A., *supra*. En síntesis, deben demostrar que: pertenecen a la clase protegida por la ley; están cualificados para ejercer sus funciones; fueron despedidos; y fueron sustituidos por una persona más joven.

En primer lugar, no cabe duda que los empleados cesanteados están dentro de las edades protegidas por la legislación federal. Al tiempo del despido el señor Durieux Sepúlveda tenía cincuenta y dos (52) años; el señor Colón Calcador tenía cincuenta y ocho (58) años; el señor Sierra Rivera contaba con cincuenta y dos (52) años; el señor Reyes Soto tenía sesenta (60) años; y el señor Santini contaba con cincuenta y cuatro (54) años. En segundo lugar, los peticionarios estaban capacitados para seguir ejerciendo sus funciones, según surge de la prueba incontrovertida y según ha sido admitido por Molinos.[16] Tercero, éstos fueron despedidos mediante cartas donde se les informó la eliminación de sus posiciones, según se indicó anteriormente.

En cuarto lugar, correspondía a los empleados probar que los sustituyó una persona más joven. De la prueba

---

[16] Alegato de la parte recurrida, 30 de abril de 2001, en la pág. 9.

documental, así como de la prueba testifical surge que las posiciones de los peticionarios fueron **eliminadas.** Esta circunstancia se les informó en las cartas de despido y así lo testificó uno de los peticionarios, el señor Colón Calcador.[17]   Con la eliminación de las plazas, Molinos decidió redistribuir las funciones que los peticionarios desempeñaban entre sus supervisores. De esta forma, las funciones que desempeñaban los supervisores de mantenimiento, señores Durieux Sepúlveda, Colón Calcador y Sierra Rivera, fueron asumidas por el ingeniero Betancourt, su supervisor.   Las funciones a cargo del señor Santini fueron asignadas al señor Lockwood, quien era vicepresidente de operaciones de harinas.   Finalmente, las tareas realizadas por el señor Reyes Soto fueron distribuidas entre su entonces supervisor, el ingeniero Betancourt, y el departamento de ingeniería ubicado en las oficinas principales de ConAgra.

De entrada es necesario indicar que **la redistribución de funciones como consecuencia de la eliminación de una posición no equivale a una sustitución en el empleo.**[18]   Consistentemente los tribunales

---

[17]   Transcripción, *supra*, pág. 76.

[18]   Al momento de los despidos, el señor Lockwood tenía cincuenta y dos (52) años y el ingeniero Betancourt tenía treinta y un (31) años. Apéndice, pág. 1160. Sin embargo, la consideración de las edades de los señores Lockwood y Betancourt resulta inmaterial para la

federales han resuelto que un empleado despedido no se considera sustituido cuando otro empleado asume las funciones de aquél en adición a las que desempeña habitualmente. *Kern v. Kollsman*, 885 F.Supp. 335, 343 (D.H.D., 1995). En casos con un trasfondo fáctico similar al de marras, donde las plazas fueron eliminadas y las responsabilidades distribuidas entre otros empleados, se ha resuelto que no ocurre una sustitución en el personal. En vista de ello los tribunales han rehusado determinar que se ha establecido una reclamación *prima facie* a la luz de la A.D.E.A., *supra*, por estar ausente el elemento de la sustitución. *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759 (8th Cir. 1995); *Lilley v. BTM Corp.*, 958 F.2d 746 (6th Cir. 1992); *Peña v. Crowley American Transp., Inc.*, 172 F.Supp.2d 321 (D. Puerto Rico 2001); *Hidalgo v. Overseas-Condado Ins. Agencies, Inc.*, 929 F.Supp. 555 (D. Puerto Rico 1996); *Dougherty v. Blue Cross Shield of Massachussets*, 966 F.Supp. 80 (D. Mass. 1996); *McCloskey v. Union Carbide Corp.*, 815 F.Supp. 78 (D. Conn. 1993).

Dado que los peticionarios no fueron sustituidos en sus empleos, es forzosa la conclusión de que no lograron establecer una reclamación *prima facie* de discrimen a la luz de la A.D.E.A., *supra*. Un análisis integral del expediente de marras nos convence de que el despido de

---

solución de la presente controversia ya que no hubo una sustitución.

los empleados obedeció a un proceso de reorganización legítimo y de que Molinos no incurrió en actos tendentes a demostrar una intención de discriminar contra los peticionarios por razón de su edad.

En virtud de los fundamentos antes expuestos, entendemos que actuó correctamente el Tribunal de Circuito al desestimar la demanda instada por los peticionarios y estamos conformes con la posición mayoritaria de confirmar la sentencia recurrida.


                        MIRIAM NAVEIRA MERLY
                         Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Durieux Sepúlveda,
et al.

    Peticionarios

       vs.             CC-2000-751         CERTIORARI

ConAgra , Inc. y/o ConAgra
Grain Proceeding Companies,
Inc.

    Recurridos

VOTO DE CONFORMIDAD EMITIDO POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 5 de febrero de 2004

Estamos <u>conformes</u> con la Sentencia emitida en el presente caso, específicamente con el resultado al que se llega en la misma, esto es, que procede la <u>confirmación</u> de la sentencia desestimatoria de la demanda o reclamación presentada por los empleados cesanteados por razón de que éstos no aportaron prueba suficiente para activar la presunción de discrimen al amparo de las disposiciones de la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. secs. 146 *et seq.* y la "Age Discrimination in Employement Act", 29 U.S.C.A. secs. 621 *et seq.*

Ello no obstante, entendemos que todo lo que se necesitaba para llegar a la anterior, y sencilla, conclusión era el análisis y la aplicación de lo resuelto por este Tribunal en _Díaz Fontánez_ v. _Wyndham Hotel Corp_., res. el 24 de octubre de 2001, 2001 T.S.P.R. 141. En el referido caso se estableció _claramente_ cuál es el proceso probatorio que deberá observase siempre que se presenten reclamaciones por despido injustificado al amparo de la Ley Núm. 100 y la Ley Núm. 80 conjuntamente. Los planteamientos esbozados en el mencionado caso demuestran, a la saciedad, la corrección de la actuación tanto del Tribunal de Instancia como del Tribunal de Apelaciones en el presente caso.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Durieux Sepúlveda,
et al.

    Peticionarios


      vs.          CC-2000-751     Certiorari


ConAgra, Inc. y/o ConAgra
Grain Processing Co., Inc.

    Recurridos

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se une el Juez Asociado señor Hernández Denton.

San Juan, Puerto Rico, a 5 de febrero de 2004.


    Aunque sea sólo sucintamente, creo menester explicar porqué no estoy de acuerdo con el dictamen mayoritario en el caso de autos.

    En lo esencial, la mayoría del Tribunal resuelve en su sentencia que los empleados despedidos en este caso no presentaron prueba suficiente para activar la presunción de discrimen que establece la Ley Núm. 100, 29 L.P.R.A., secciones 146 *et seq.*

    Sin embargo, de la propia sentencia de la mayoría del Tribunal surge un hecho contundente que dicha mayoría no sopesó adecuadamente. Resulta que los empleados al ser despedidos tenían edades que fluctuaban entre los 52 a los 60 años. **La edad promedio de los despedidos era de más de 55 años,**

lo que era marcadamente mayor que la edad promedio de **43 años**, que tenían todos los empleados del patrono para el año del despido en cuestión. Este dato es muy revelador. Permite presumir que el patrono incurrió en discrimen por razón de edad; es decir, apunta a que el confesado propósito que tuvo la empresa al despedir a los peticionarios, de reducir sus costos y aumentar así las ganancias, **se llevó a cabo precisamente con respecto a los empleados de mayor edad de la empresa**. Para mí ello es prueba suficiente para activar la presunción de la Ley Núm. 100, *supra*.

En mi criterio, la reorganización de una empresa para aumentar sus ganancias, no puede descansar lícitamente en el despido de sus empleados de mayor edad. Ello atenta claramente contra el sentido y el propósito de la Ley Núm. 100 referida. Por ello, al quedar establecido el hecho contundente mencionado en el párrafo anterior, se activó efectivamente la presunción de discrimen de la Ley Núm. 100, y el patrono venía obligado a presentar prueba fehaciente y preponderante de que no hubo tal discrimen. Cualquier otra interpretación de este asunto, socava la intención que tuvo el legislador de proteger de modo especial a la clase trabajadora del país. No debe olvidarse que la Ley Núm. 100 no es una pieza legislativa ordinaria que este Tribunal pueda interpretar rutinariamente. Se trata de una legislación progresista y de avanzada, de arraigo

constitucional, que formula una política pública fundamental de justicia social, que debemos honrar.

Como la mayoría del Tribunal sustenta un punto de vista contrario al mío, yo disiento.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO